**E. GLUCK CORPORATION, Plaintiff,**

v.

**Adam ROTHENHAUS, Defendant.**

**No. 08 Civ. 3466(VM).**

United States District Court, S.D. New York.

Nov. 3, 2008.

Richard Scott Schurin, Gottlieb Rackman & Reisman, P.C., New York, NY, for Plaintiff.

Elizabeth Shieldkret, Elizabeth Shieldkret, Attorney At Law, Rego Park, NY, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff E. Gluck Corporation ("Gluck") brought this action alleging that defendant Adam Rothenhaus ("Rothenhaus"): (1) infringed its NOW trademark ("NOW") in violation of Section 32 of the Lanham Act (the "Lanham Act"), 15 U.S.C. § 1114(1); (2) engaged in cyberpiracy by maintaining the domain name www.thenowwatch.com (the "Domain Name") in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); and (3) engaged in unfair competition in violation of Section 43 of the Lanham Act, § 1125(a). Among other relief, Gluck seeks: to restrain Rothenhaus from infringing Gluck's NOW trademark, including use or display of The Now Watch ("THE NOW WATCH") name or mark; to have Rothenhaus abandon his trademark application (the "Initial Application") with the United States Patent and Trademark Office (the "PTO"); and to permanently prohibit Rothenhaus from seeking registration of any mark incorporating the term "NOW" for watches or watch related products.

Rothenhaus subsequently moved for sanctions under Rule 11 of the Federal Rules of Civil Procedure (the "Rule 11 Motion") to be imposed against Gluck and its counsel. Specifically, Rothenhaus sought dismissal of the Complaint, which he argued was frivolous, as well as attorneys fees, costs and any other measures the Court deemed appropriate. Gluck countered that the Rule 11 Motion itself was without merit and sought reimbursement of costs in opposing the motion. The Court, by order dated July 31, 2008, denied both parties' motions. *See Gluck v. Rothenhaus*, 252 F.R.D. 175 (S.D.N.Y. 2008).

Gluck now moves for a preliminary injunction to enjoin Rothenhaus from "any manufacture, sale, or promotion of any product under the NOW or THE NOW WATCH names and from the continued ownership and operation of its website with the domain name, thenowwatch.com." (Plaintiff's Memorandum of Law in Support of Its Motion for a Preliminary Injunction, dated June 6, 2008, (the "Preliminary Injunction Memo") at 19.) Rothenhaus cross-moves to dismiss (the "Motion to Dismiss") Gluck's amended complaint, dated June 4, 2008 (the "Amended Complaint").[1] For the reasons stated below, Gluck's Motion for Preliminary Injunction is GRANTED in part and DENIED in part and Rothenhaus's Motion to Dismiss is DENIED.

## I. BACKGROUND [2]

Gluck creates, designs and manufactures watches sold under various trademarks. These watches are sold nationwide through thousands of retailers. At issue in the instant action is Gluck's NOW trademark, which has been registered with the

---

**1.** After the Motion for Preliminary Injunction and Motion to Dismiss were fully briefed, Gluck sent additional papers to the Court, dated July 29, 2008 (the "Additional Papers"). As the motions had been fully submitted when the Additional Papers were sent, the Court did not consider the Additional Papers or any other subsequent material sent by the parties. However, these materials would not have changed the outcome of the Court's ruling.

**2.** The following factual summary derives from the parties' submissions to the Court and any exhibits attached thereto, specifically: Gluck's First Amended Complaint, dated June 4, 2008 ("Am.Compl."); and the Declaration of Elizabeth Shieldkret in Support of Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction ("Shieldkret Aff."). Except where specifically quoted, no further reference to these documents will be made.

PTO since 1987[3] and is featured on the face of a line of women's watches. Rothenhaus also produces and manufactures an allegedly similar product, THE NOW WATCH, which contains the term "Now" on the face of the watch and the term "The Now Watch" on the box. Additionally, Rothenhaus has registered the Domain Name, where he advertises and sells THE NOW WATCH. A card bearing the Domain Name and a message signed "Adam Rothenhaus, founder of The Now Watch" is included in each watch box. (Copy of Card attached as Defendant's Trial Ex. EA to Shieldkret Aff.)

Rothenhaus filed the Initial Application with the PTO to register THE NOW WATCH as a trademark on an intent-to-use basis (indicating that the mark was not in use) on February 7, 2006. The PTO rejected the Initial Application on August 1, 2006 (the "August Rejection"), finding a likelihood of confusion with Gluck's NOW trademark and stating that "the goods are highly related: watches and watch faces." (PTO Office Action, dated Aug. 1, 2006, attached as Ex. D to Am. Compl. at 2.) The rejection noted that the marks featured the "same wording forming the major portion of the marks: NOW, THE NOW WATCH." *Id.* The PTO did not find the addition of the generic term "watch" to "obviate the likelihood of confusion." *Id.*

After receiving the August Rejection, Rothenhaus filed a response challenging the PTO's determination (the "October Response"). (Response to Office Action, dated Oct. 12, 2006, attached as Ex. E to Am. Compl.) In the October Response, Rothenhaus conceded that upon initial review

the finding of a likelihood of confusion was understandable but urged the PTO to more carefully evaluate the marks in light of their particular characteristics. He argued that THE NOW WATCH served a "new and unique purpose" as it reminded people that "it is always the present moment." (October Response at 1, 3.) He asserted that Gluck's use of the word "Now" on the face of its watches served an entirely different purpose as it was not as "prominent" and was often combined with other terms such as "water resist" or "Armitron." (*Id.* at 2.) He contended that the addition of the article "the" and the word "watch" helped to distinguish the two marks. Further, Rothenhaus stated that his use of the word "Now" was descriptive.

The PTO again rejected Rothenhaus's application by PTO Office Action in December 2006 (the "December Rejection"). (PTO Office Action, dated Dec. 1, 2006, attached as Ex. F to Am. Compl.) The PTO found that there was a likelihood of confusion because of the similar or identical character of the goods. While Rothenhaus had identified the goods to be used as "watch faces," the PTO found that the "Now" on the face of Rothenhaus's watch served to identify the whole watch, rather than just the face. The PTO found that the term "Now" was the significant feature in both marks, creating the major commercial impression of both marks. Therefore, it concluded, the goods were both watches featuring the word "Now," making consumer confusion between the marks likely.

Rothenhaus filed a second reply on December 24, 2007 (the "December Response") purporting to attach new digitized pictures of the proposed mark.[4] (Re-

---

**3.** United States Patent and Trademark Registration No. 1,446,294, dated July 7, 1987. Gluck's PTO registration lists September 16, 1986 as the date Gluck first used the NOW mark in commerce and Gluck filed its registration application for the mark on November

5, 1986. However, although the Amended Complaint states that the NOW mark was "first registered in 1986," the PTO did not register the mark until July 7, 1987.

**4.** There appears to have been additional correspondence between Rothenhaus and the

sponse to Office Action, dated Dec. 24, 2007 attached as Ex. G to Am. Compl.) On January 25, 2008, the PTO rejected the amended drawing and again refused to register the mark (the "January Rejection"). (PTO Office Action, dated January 25, 2008 attached as Ex. H to Am. Compl.) The PTO noted that even if the amended drawing had been acceptable, the mark would not be registered as the goods were similar or identical to Gluck's goods. The rejection explained that because "Now" is the dominant feature of both Gluck and Rothenhaus's watches, that term is the one consumers will most likely remember. Thus, the examiner concluded that confusion is likely and that Rothenhaus's application must be rejected.

Gluck sent Rothenhaus a cease and desist letter, dated March 25, 2008, demanding that Rothenhaus: cease use of the phrase "The Now Watch" and the NOW mark; transfer the Domain Name to Gluck; forward documentation to Gluck regarding the manufacture and sale of Rothenhaus's watches; indicate what remaining inventory existed; send Gluck and accounting of all sales of the watches to date and agree to compensate Gluck accordingly. (Letter to Rothenhaus from Gottlieb Rackman & Reisman, P.C., dated March 25, 2008, attached as Ex. K to Am. Compl.) After Rothenhaus failed to comply with these demands, Gluck filed the Complaint in this Court against Rothenhaus.

## II. DISCUSSION

### A. LEGAL STANDARD

#### 1. 12(b)(6) Motion

In evaluating the sufficiency of the pleadings on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). To survive a motion to dismiss, a plaintiff "must assert a cognizable claim and allege facts that, if true, would support such a claim." *Boddie v. Schnieder,* 105 F.3d 857, 860 (2d Cir.1997). Thus, Gluck's complaint must set forth enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).

#### 2. Preliminary Injunction Motion

██ "To obtain a preliminary injunction, a plaintiff must establish: '(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in' its favor." *Louis Vuitton Malletier v. Burlington Coat Factory,* 426 F.3d 532, 537 (2d Cir. 2005) (*quoting Federal Express Corp. v. Federal Espresso, Inc.,* 201 F.3d 168, 173 (2d Cir.2000)).

██ Gluck brings this action for a preliminary injunction to stop the infringement of its trademark by Rothenhaus. To analyze trademark infringement claims courts use a two-prong test. First, the Court must determine "whether the plaintiff's mark merits protection, and second, whether the defendant's use of a similar mark is likely to cause consumer confusion." *Louis Vuitton Malletier v. Dooney & Bourke,* 454 F.3d 108, 115 (2d Cir.2006) (*citing Gruner + Jahr USA Pub. v. Mere-*

PTO, as the December Response references a June 27, 2007 Office Action which was not submitted to the Court.

*dith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993) (*citing* 15 U.S.C. § 1114(1)(a))).

■ In determining the likelihood of confusion, the Court looks to the factors established in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)(the *"Polaroid* Factors"), including:

> (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will "bridge the gap" . . .; (5) actual .confusion; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers.

*Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir.1995).

## B. *APPLICATION*

### 1. *Protectable Mark*

■ Gluck owns the registered NOW mark for "watches" (*see* U.S. Trademark Reg. No. 1,446,294 dated July 7, 1987, attached as Ex. B to the Am. Compl.), and states in its Amended Complaint that it has used this mark continuously since it was registered in 1987. Am. Compl. at 1–2; Ex. B to Am. Compl. The mark has, therefore, become incontestable. *See Gruner + Jahr*, 991 F.2d at 1076 ("[A] mark registered by its owner shall be *prima facie* evidence of the registrant's exclusive right to use the mark in commerce on the product. . . . A registered mark becomes incontestable if it has been in continuous use for five consecutive years subsequent to its registration and is still in use." (*citing* the Lanham Act, 15 U.S.C. §§ 1065 & 1115(a))).

■ Incontestable marks are still open to the defenses listed in § 1115(b) of the Lanham Act. These include cases in which the "registration . . . was obtained fraudulently" (§ 1115(b)(1)), the registrant has abandoned the mark (§ 1115(b)(2)) or where the alleged infringer makes fair use

of the mark (§ 1115(b)(4)). While affirmative defenses may be raised in a Rule 12(b)(6) motion, a motion to dismiss is not the proper mechanism to raise defenses that are necessarily fact-intensive. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir.1998) (holding that an affirmative defense may be raised on a motion to dismiss if the defense appears on the face of the complaint); *Cortland Line Co. v. Orvis Co.*, No. 97 Civ. 1294, 1997 WL 808608, at *4 (N.D.N.Y. Jan.5, 1997)(*citing Int–Elect Eng'g, Inc. v. Clinton Harley Corp.*, No. C–99–20718, 1993 WL 557639, at *2 (N.D.Cal. Jun.24, 1993)) (holding that affirmative defenses that "involve a . . . detailed analysis of the facts at issue" are not appropriately resolved on a motion to dismiss).

Rothenhaus raises the fraud, abandonment and "fair use" defenses in his Rule 12(b)(6) motion and his Opposition to Gluck's Preliminary Injunction Motion ("Rothenhaus's Opposition"). However, these inquires are necessarily fact-intensive and Rothenhaus has not, at this point, sufficiently satisfied his burden with respect to any of these affirmative defenses. Gluck, however, has made persuasive arguments against the applicability of these defenses to the case at hand. The Court finds that the Amended Complaint pleads facts that, if proven, would show that Gluck owns a protectable mark. Further, the Court finds it likely that Gluck would succeed at trial in proving that it has an incontestable mark that is not subject to the affirmative defenses raised by Rothenhaus.

### a. *Fraud*

■ Rothenhaus asserts that Gluck's NOW mark was obtained fraudulently and, therefore, is not incontestable. Rothenhaus claims that the specimens Gluck attached to its PTO registration applications

did not accurately reflect the way in which the NOW mark was being used in the marketplace. Specifically, Rothenhaus claims that Gluck chose to submit hang tags to the PTO bearing the NOW mark alone when, in fact, Gluck uses "Armitron Now" to identify its products in the marketplace. According to Rothenhaus, this choice was a deliberate attempt by Gluck to conceal the real use of the mark and to avoid registering "Armitron Now" as a composite or unitary mark. At the very least, Rothenhaus claims that Gluck's renewal applications amount to fraud as these applications attached the same hang tags after Gluck had stopped using the NOW mark by itself. Gluck denies these allegations and asserts that, even if they do use "Armitron" with NOW at times, products regularly bear more than one protectable mark, such as products that bear both a house mark and a product mark. Gluck also argues that the a hang tag is an acceptable specimen for submission to the PTO.

■■■ To raise a successful defense of fraud under 15 U.S.C. § 1115(b)(1), the "[a]lledgedly fraudulent statements must show a deliberate attempt to mislead the Patent and Trademark Office and may not be the product of an error or inadvertence." *Pilates, Inc. v. Current Concepts, Inc.*, 120 F.Supp.2d 286, 312 (S.D.N.Y. 2000). The fraud must be proven by clear and convincing evidence. *See Martha Graham Sch. and Dance Found. Inc. v. Martha Graham Ctr. of Contemporary Dance Inc.*, 153 F.Supp.2d 512, 524 (S.D.N.Y.2001) (*citing Orient Express Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 653 (2d. Cir.1988); *Pilates*, 120 F.Supp.2d at 295), *aff'd* 43 Fed. Appx. 408, 415 (2d Cir.2002). Courts and the Trademark Board have held that this "disfavored" defense must be proven to the "hilt" by the party alleging the fraud. Thomas J. McCarthy, *McCarthy on Trade-*

*marks and Unfair Competition*, § 31:68 (4th ed.2008) (citations omitted).

Rothenhaus's allegations do not meet this high burden. He does not allege that Gluck submitted a hang tag to the PTO that was not actually attached to Gluck's products, only that the tag did not reflect the way Gluck used the mark on other materials. The Trademark Rules of Practice explicitly list "label[s]" and "tag[s]" in the definition of acceptable specimens for submission to the PTO for registration of a mark. *See U.S. Trademark Law Rules of Practice*, § 2.56(b)(1)(2008). Even if the tag did not reflect the manner in which NOW was used on other materials, Rothenhaus has not proven that the selection of the tag would amount to anything more than "mere error or inadvertence," which is not sufficient to prove fraud. *Martha Graham*, 153 F.Supp.2d at 524 (*citing Pilates*, 120 F.Supp.2d at 312). Lastly, even if Rothenhaus proved that "Armitron" was used with NOW in all other material, it is clear that multiple marks may be used together. *See JA Apparel v. Abboud*, No. 07 Civ. 7787, 2008 WL 2329533, at *18 n. 21 (S.D.N.Y. June 5, 2008) (*citing Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 757 (9th Cir.2006)).

b. *Abandonment*

■■■ Rothenhaus asserts that Gluck has abandoned the NOW mark in favor of "Armitron Now" and, therefore, the NOW mark is not incontestable. To mount a successful defense of abandonment, Rothenhaus bears the burden of proving "either the owner's intent to abandon the mark, or a course of conduct on the part of the owner causing the mark to become generic or lose its significance as a mark." *Hermes Int'l v. Lederer de Paris Fifth Ave.*, 219 F.3d 104, 110 (2d Cir.2000) (citation omitted). This defense must be proven by clear and convincing evidence. *Pi-*

*lates, Inc.,* 120 F.Supp.2d at 295. Nonuse of a mark for three years constitutes prima facie evidence of abandonment. *See* 15 U.S.C. § 1127.

Gluck attached samples of advertising materials, including pictures of store displays and watches, to the Amended Complaint. Rothenhaus points to these exhibits as evidence that Gluck uses the NOW mark only in conjunction with the "Armitron" mark. Gluck argues that, consistent with the practice of many watch manufacturers, it has properly used a house mark and product mark on some of its products, but that this practice does not compromise the protectability of either of the marks.

A review of the exhibits attached to the Amended Complaint reveals that most of the watches, displays and advertisements include the words "Now" and "Armitron" in varying combinations, sizes and prominence. However, there are some watch faces shown in the exhibits that bear only the words "Now" and "Quartz" on their face and some display trays that feature the "Now" mark alone.

The materials in the exhibits are entirely consistent with "Armitron" being used as a "house" mark and NOW as a "product" mark. For example, in what appears to be a catalog of Armitron products, "Now," "All–Sport" and "Character" are listed with products falling under each category. As discussed in the previous section, "a product mark ... even if always displayed with a house mark ... may acquire independent trademark significance." *JA Apparel,* 2008 WL 2329533, at *18 n. 21 (*citing Quiksilver, Inc.,* 466 F.3d at 757). Additional facts would have to be developed in order to conclusively prove abandonment because, even if Rothenhaus could demonstrate that all of the exhibits showed that "Armitron" was used in conjunction with "Now," this evidence, by itself, would not conclusively demonstrate abandonment.

While much of the material attached to the Amended Complaint is undated, Gluck asserts in its complaint that it has marketed and sold the NOW-branded watches for the past twenty-two years and Rothenhaus has not sufficiently refuted this claim with clear and convincing evidence of nonuse.

Accordingly, the Court finds that Rothenhaus has not proven, by clear and convincing evidence, that Gluck has abandoned the NOW mark.

### c. *Fair Use*

■ Lastly, Rothenhaus claims that he is making fair use of the NOW mark to describe his watches, which remind people to live in the present moment. Although he features the word "Now" on the faces of the watches he sells, he argues that the term is used there as a slogan and not as a source identifier. Gluck alleges that Rothenhaus is using "The Now Watch" as a mark and, therefore, may not raise the fair use defense.

■ A registered mark may be used if the use "of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of ... a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or geographic origin." 15 U.S.C. § 1115(b)(4). To determine whether a use is "fair," courts must examine whether the term is used "(1) descriptively, (2) other than as a mark, and (3) in good faith." *Car–Freshner Corp. v. S.C. Johnson & Son, Inc.,* 70 F.3d 267, 269 (2d Cir.1995). As noted previously, "[a]lthough affirmative defenses may be raised in a motion to dismiss, defenses such as the fair use doctrine involve a more detailed analysis of the facts at issue and are best resolved by summary judgment motions or adjudication at trial." *Cortland Line Co.,* 1997 WL 808608, at *4. Therefore, a judgment on the pleadings as

to fair use would be inappropriate on the record now before the Court. However, the Court examines the parties' arguments regarding fair use at this point to the extent they bear on the pending preliminary injunction request.

Rothenhaus operates a website at the Domain Name address through which he sells watches bearing the word "Now" on their face. *See* Screen captured image of www.thenowwatch.com attached as Ex. F Aff. to Affidavit of Bernard Fernandez in Support of Plaintiff's Motion for a Preliminary Injunction (the "Fernandez Aff."). Rothenhaus refers to his business on this website as "The Now Watch," a term which is stamped on the box in which the watches are packaged and the card enclosed in that box. Further, he uses the trademark symbol "tm" after the term "The NOW Watch" on his website. Finally, Rothenhaus attempted several times to register THE NOW WATCH with the PTO as a trademark.

■ Use as a mark occurs when "a mark indicates the source or origin of consumer products." *Dessert Beauty, Inc. v. Mara Fox,* 568 F.Supp.2d 416, 424 (S.D.N.Y.2008) (holding that use of words on a product's packaging does not constitute use as a mark where the maker's trademark is also "conspicuously visible" and identifies the source) (*citing Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC,* 221 F.Supp.2d 410, 414 (S.D.N.Y. 2002)). The use of a term as a website domain name and the attempt to register a name as a mark have both been found to be sufficient to prove use as a mark. *See Adjusters Int'l, Inc. v. Public Adjusters Int'l, Inc.,* No. 92 Civ. 1426, 1996 WL 492905, at *15 (N.D.N.Y. Aug.27, 1996) (finding that an attempt to register the name in question as a mark "highly persuasive, if not conclusive, evidence that defendants were using the words ... in a trademark sense"); *TCPIP Holding Co. v.*

*Haar Commc'n, Inc.,* 244 F.3d 88, 104 (2d Cir.2001) (finding use of term as a domain name was use as a mark).

While Rothenhaus claims that he is using the term "Now" on the face of his watches as a slogan, the term "The Now Watch" is stamped on the watch's box. In addition, a card is enclosed in each box bearing a message signed "Adam Rothenhaus, founder of The Now Watch" and listing the Domain Name. The packaging of Rothenhaus's product, the Domain Name Rothenhaus chose, his attempt to register the term as a mark and the reference to Rothenhaus's business as "The Now Watch," among other facts, lead the Court to find that Gluck is likely to succeed in proving that Rothenhaus is using THE NOW WATCH as a mark.

Accordingly, Gluck has satisfied the first prong of the test for a preliminary injunction in a trademark infringement case, namely that Gluck has a protectable mark.

### 2. *Likelihood of Confusion*

Next, the Court examines whether Gluck has demonstrated that Rothenhaus's THE NOW WATCH creates a likelihood of confusion between Rothenhaus's marks and Gluck's NOW mark.

■ The PTO has determined, on at least three occasions, that there is a likelihood of confusion between Gluck's and Rothenhaus's marks. While these ex parte determinations are not "conclusive," they are to be afforded "great weight" by courts in trademark suits. *See, e.g., Syntex Labs., Inc. v. Norwich Pharmacal Co.,* 437 F.2d 566, 569 (2d Cir.1971). Therefore, the Court considers the PTO decisions when conducting its own analysis.

In examining the likelihood of confusion the Court considers the eight, non-exclusive *Polaroid* Factors. Based on this review, the Court finds that *Polaroid* Fac-

tors one, two and three especially weigh in favor of Gluck, Factors six and eight are less clear but may weigh in favor of Gluck, Factor four is not relevant to the Court's inquiry, and Factors five and seven have not been developed at this early stage of litigation and remain neutral.

### a. Strength of Mark

 Courts consider the inherent distinctiveness of a mark when assessing its strength, judging the mark on a scale from (1) generic, (2) descriptive, (3) suggestive to (4) arbitrary and fanciful. *See TCPIP Holding*, 244 F.3d at 93 (*citing Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9–11 (2d Cir. 1976)). Rothenhaus argues that Gluck's mark is merely descriptive as "Now" refers to a time of day. The Court disagrees and finds that Gluck's NOW mark is suggestive. The Second Circuit has described a suggestive mark as one that "employs terms which do not describe but merely suggest that features of the product, requiring the purchaser to use imagination, thought and perception to reach a conclusion as to the nature of the goods." *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 572 (2d Cir.1993). In the instant case, "Now" is not a term of description for either of the parties's watches, but rather suggests a watch's function—telling the present time. Some imagination is required for the purchaser to make a link between the word and the product.

The Second Circuit has noted that, in addition to the mark's level of inherent distinctiveness, "registered trademarks are presumed to be distinctive and should be afforded the utmost protection." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d. Cir.1986). As discussed in the previous sections, Gluck has an incontestable mark, originally registered in 1987. Gluck claims to have actively used this mark for the past twenty-two years to market its NOW line of watches.

Rothenhaus also argues that Gluck's mark has become weak because of Gluck's failure to police it in the marketplace. Gluck counters by offering evidence of successful infringement suits it has brought against other users of the NOW mark. What little evidence Rothenhaus offers of this contention is contested and rebutted by Gluck. The Court is not convinced that Gluck's mark has been weakened by a host of infringers because of lack of enforcement of Gluck's trademark rights.

Accordingly, the Court finds that Gluck's mark is strong and therefore the first *Polaroid* Factor weighs in its favor.

### b. Similarity of Marks

 The Court finds that Rothenhaus's mark is very similar to Gluck's mark. Both parties use the word "Now" on the faces of watches. Although Rothenhaus uses the phrase THE NOW WATCH and not "Now" alone on his other materials, the addition of the generic term "watch" and the article "the" do not adequately distinguish his product from Gluck's mark, as noted in the PTO's rejections of Rothenhaus's application. (August Rejection at 2; December Rejection at 2.) As the PTO noted, "Now" is the dominant portion of both marks and is therefore given extra weight in determining whether the marks are likely to be confused. (August Rejection at 2; December Rejection at 2; January Rejection at 3.) *See, e.g., Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1530 (4th Cir.1984) (stating that it is a "settled principle of trademark law that the dominant part of a mark may be given extra weight on the issue of likelihood of confusion"). Rothenhaus went so far as to capitalize the word "NOW" on the packaging for his watches that bear the term "The Now Watch," thereby de-emphasizing the words he claims distinguish his product from Gluck's mark.

Rothenhaus argues that Gluck uses the "Armitron" name in conjunction with the NOW mark, lessening the likelihood of consumer confusion. However, in the case Rothenhaus cites to support this argument, the Second Circuit found that the plaintiff always emphasized the house mark when using the product mark and that there was a "significant" "competitive distance" between the products. *McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1133–34 (2d Cir.1979). Rothenhaus has not sufficiently demonstrated, at this point, that Gluck always uses "Armitron" with "Now" and the Court is not persuaded that the use of both names would lessen the likelihood of confusion because the products are identical and, as discussed in the following section, they are in close competitive proximity. Therefore, the second *Polaroid* Factor also weighs in favor of Gluck.

### c. Proximity of Products

The third *Polaroid* Factor is the proximity of the products in the relevant market. The products at issue here are both watches. Rothenhaus, however, seeks to distinguish the two by asserting that his watches are unisex while Gluck's NOW line includes only women's watches. Even if this distinction were established, the parties' products are still in close proximity as they both market watches to women in similar settings and at comparable price levels.[5]

Gluck's products are sold nationwide through various large retailers, both on the internet and in stores. Rothenhaus, still new to the market, currently sells his watches online through his website and in a few local stores. Rothenhaus's website indicates that his goal is to provide customers with a "diverse range of purchasing opportunities" that include "mainstream shopping malls." Fernandez Aff. Ex. F. Therefore, both products are currently sold on the internet and it appears that Rothenhaus intends to market his products to retailers in "mainstream" settings, settings in which Gluck's products are currently sold.

Rothenhaus also asserts that his products are specifically marketed to people who seek to be reminded to live in the present moment. While this purpose may be clear from Rothenhaus's website, he also sells his watches through retailers who may or may not emphasize this message. That this purpose is mentioned on the card Rothenhaus includes in the watch's packaging does little to distinguish the product from Gluck's, as the card may not be noticed until after purchase. Rothenhaus cannot control how his goods are displayed or marketed after they are bought by a retailer. Even if the message was somehow conveyed to consumers, the fact remains that both products are watches that bear the word "Now" on their faces and consumers may not distinguish the two based on the accompanying marketing message.

### d. Good Faith of Defendant

Although more factfinding is necessary regarding the sixth *Polaroid* Factor, the good faith of Rothenhaus, Gluck has a persuasive argument that Rothenhaus did not adopt his mark in good faith. The PTO told Rothenhaus on multiple occasions that it believed his mark would cause confusion with Gluck's mark and he continued to market and sell his product. Courts have found that a PTO rejection does not give rise to an automatic finding of bad faith, even where that rejection was

---

**5.** Gluck's NOW watches retail for $30–$40 and Rothenhaus sells his for $45. *See* Fernandez Aff. at ¶ 7 and Ex. F.

based on a likelihood of confusion with the other party's mark. *See Mushroom Makers, Inc. v. R.G. Barry Corp.,* 441 F.Supp. 1220, 1230 (S.D.N.Y.1977). However, this argument is more persuasive where the junior user believed in good faith that the products were so dissimilar that confusion would not occur. *Id.* ("The fact that one believes he has a right to adopt a mark already in use because in his view no conflict exists since the products are separate and distinct cannot, by itself, stamp his conduct as in bad faith, even after the Patent Office has refused the mark registration"). Here, where the PTO's several rejections specifically noted that the products were "highly related: watches and watch faces" and the rejection was based on the "similarity of goods" as well as "similarity of the marks," this rational does not hold as much sway. (August Rejection at 2; December Rejection at 2.) *See Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.,* 411 F.2d 1097, 1100–01 (2d Cir.1969) (holding that defendant's persistence in using same mark that was rejected by PTO was evidence of bad faith where the products "obviously closely related").

### e. *Sophistication of Consumers*

Additional factfinding is also needed with regard to the sophistication of the buyers of Gluck and Rothenhaus's products. Rothenhaus claims that his buyers are sophisticated in that they seek spiritual enlightenment and buy his products to help achieve that goal. Gluck argues that when the products and marks are similar, the sophistication of the buyers may not be relied upon to prevent confusion. Even if this factor were to be considered, Gluck asserts that both Rothenhaus's product (at $45) and their own product ($30–$40) are relatively inexpensive consumer goods that do not attract sophisticated consumers. The Court cannot determine the relative sophistication of the consumers at this stage of litigation. However, given the similarity of the goods and marks, both watches with the word "Now" on their face, it does not seem likely that the level of sophistication of the consumers would mitigate the confusion. *See, e.g., McGregor–Doniger,* 599 F.2d at 1137.

### f. *Likelihood of Bridging the Gap*

As the Court has found that the products are both watches that are sold in similar settings, online and through retailers, there is no gap to bridge. Thus, *Polaroid* Factor four is neutral to the analysis. *See, e.g., Real News Project, Inc. v. Independent World Television, Inc.,* No. 06 Civ. 4322, 2008 WL 2229830, at *17 (S.D.N.Y. May 27, 2008)(citing *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,* 317 F.3d 209, 218 (2d Cir.2003); *Star Indus.,* 412 F.3d at 387).

### g. *Actual Confusion and Quality of Products*

The fifth and seventh *Polaroid* Factors have not been adequately established. Gluck has not presented the Court with any evidence of actual confusion, but none is required especially at this early stage of litigation and as Rothenhaus's product is new to the market. *See, e.g., Centaur Commc'ns., Ltd. v. A/S/M Commc'ns.,* 830 F.2d 1217, 1227 (2d. Cir.1987) *overruled on other grounds by, Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1043–44 (2d. Cir.1992)(holding that a lack of actual confusion is not significant and is understandable where the parties were only competing in the marketplace for a short time).

Although the parties both make arguments about the respective quality of their products, there is not enough evidence before the Court at this stage to properly weigh this factor.

Weighing the *Polaroid* Factors in this case, the Court finds that they strongly favor a finding that consumer confusion is likely. Many of the factors tip heavily towards a finding for Gluck while the others are, at best, neutral. The Court is especially persuaded by the fact that the products are both watches with the term "Now" on their face, which the Court finds likely to cause confusion. This finding is bolstered PTO's having made the same determination when examining Rothenhaus's registration application.

The Court finds that Gluck's Amended Complaint adequately states a claim for trademark infringement, as it alleges that Gluck has a protectable mark and that Rothenhaus's mark is likely to cause confusion with Gluck's mark. Further, with respect to the motion for preliminary injunction, the Court finds that Gluck is likely to succeed on the merits of proving this likelihood of confusion.

### 3. *Irreparable Harm*

■■■■■■ On a motion for a preliminary injunction, "where the plaintiff has a protected mark, 'a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm.'" *New Kayak Pool Corp. v. R & P Pools, Inc.*, 246 F.3d 183, 185 (2d Cir.2001) (*quoting Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir.1988)). Rothenhaus asserts that this presumption was rejected by the Supreme Court in *eBay Inc. v. MercExchange LLC*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). However, that case involved permanent injunctions issued under the Patent Act; the presumption still stands in this Circuit for preliminary injunctions. *See id.* at 391, 126 S.Ct. 1837; *JA Apparel*, 2008 WL 2329533, at *22. Cf., *Lennon v. Premise Media Corp.*, 556 F.Supp.2d 310, 320 n. 1 (acknowledging the rule announced in *eBay* but distinguishing it from the preliminary injunction context and holding that the presumption of irreparable harm still holds for copyright infringement cases in the Second Circuit and noting that it also still holds for false advertising cases).

In addition, Gluck lays out the harm that it believes would result if an injunction is not granted. It fears confusion and lost sales would follow because Rothenhaus's Domain Name appears in internet searches for the words "now" and "watch." Further, it warns of possible damage to reputation that would occur if Rothenhaus does not adhere to the same standards of quality that Gluck has upheld. Gluck also foresees lost sales resulting from Rothenhaus's continued promotion of THE NOW WATCH. Given the early stage of the litigation, it is understandable that more concrete examples of harm are not readily available, but the harm that results from confusion, which the Court has determined is likely, is a real threat to Gluck.

Therefore, the Court concludes that Gluck has demonstrated that it has a protectable mark that is likely to be confused with Rothenhaus's mark and that irreparable harm will result if Rothenhaus continues to promote and sell products with this infringing mark.

### 4. *Anticybersquatting Consumer Protection Act*

■■■■■ To state a claim under the Anticybersquatting Consumer Protection Act ("ACPA") a party must plead that the defendant, in bad faith, registered, trafficked in, or used a domain name that is identical or confusingly similar to Plaintiff's distinctive mark. *See* 15 U.S.C. § 1125(d)(1)(A). The ACPA also lists factors that may be considered when determining the bad faith of the defendant. *See id.* at § 1125(d)(1)(B). Gluck alleges that Rothenhaus operates the Domain Name that is confusingly similar to their protectable NOW mark in bad faith. As dis-

cussed above, Rothenhaus disputes that Gluck has a protectable mark and that his mark is confusingly similar to Gluck's mark. As discussed in the previous sections, the Court has rejected these arguments at this stage.

Rothenhaus also argues that Gluck has not adequately pled bad faith requiring the dismissal of Gluck's ACPA claim. However, Gluck specifically alleges in its Amended Complaint that Rothenhaus registered, maintains and operates the Domain Name in bad faith with knowledge of Gluck's protected mark and with the intent to divert customers from Gluck. Gluck further alleges that it has promoted its NOW watches and sold them nationwide for over 20 years and that Rothenhaus had actual or constructive knowledge of Gluck's mark when he registered the Domain Name. The Amended Complaint also referenced the PTO's August Rejection, which specifically refers to Gluck's NOW mark, and determined that the two marks were confusingly similar. These allegations, which are taken by the Court as true at this stage of the litigation, are sufficient to state a claim under the ACPA and raise the allegations above the "speculative level." *Twombly,* 127 S.Ct. at 1965.

■ Gluck's Preliminary Injunction Memo states the requested relief in the first and last paragraphs. Both paragraphs seek an injunction barring Rothenhaus from using the NOW and THE NOW WATCH marks in connection with the promotion and sale of watches and from continuing to operate the Domain Name. However, the last paragraph requests that the Court enjoin Rothenhaus from the "continued ownership" of the Domain Name. This kind of relief is not appropriate at the preliminary injunction stage and is unnecessary to protect Gluck from irreparable harm.

## III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 27) of defendant Adam Rothenhaus ("Rothenhaus") to dismiss the First Amended Complaint of plaintiff E. Gluck Corporation ("Gluck") is DENIED; and it is further

**ORDERED** that the motion for preliminary injunction (Docket No. 11) of Gluck is DENIED with respect to enjoining Rothenhaus's ownership of the domain name, www.thenowwatch.com, but GRANTED as to preliminarily enjoining Rothenhaus from using the NOW and THE NOW WATCH marks to promote, market, advertise, distribute or sell watches and from using the Domain Name for these purposes; and it is finally

**ORDERED** that the parties confer to prepare and submit to the Court by November 12, 2008 a proposed case management plan in the form provided by the Court.

**SO ORDERED.**