RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0145p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CFE RACING PRODUCTS, INC.,

  *Plaintiff-Appellant/Cross-Appellee* (14-1357 & 14-1608),

    *Plaintiff-Appellee* (14-1939),

  *v.*

             Nos. 14-1357/1608/1939

BMF WHEELS, INC.; BROCK WELD,

 *Defendants-Appellees/Cross-Appellants* (14-1357 & 14-1608),

  *Defendants-Appellants* (14-1939).

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cv-13744 —David M. Lawson, District Judge.

Argued: March 5, 2015

Decided and Filed: July 13, 2015

Before: COLE, Chief Judge; MOORE and CLAY, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Brian B. Brown, CARLSON, GASKEY & OLDS, P.C., Birmingham, Michigan, for Appellant/Cross-Appellee in 14-1357 and 14-1608 and for Appellee in 14-1939. Mark A. Cantor, BROOKS KUSHMAN P.C., Southfield, Michigan, for Appellee/Cross-Appellant in 14-1357 and 14-1608 and for Appellant in 14-1939. **ON BRIEF:** Brian B. Brown, Steven Susser, CARLSON, GASKEY & OLDS, P.C., Birmingham, Michigan, for Appellant/Cross-Appellee in 14-1357 and 14-1608 and for Appellee in 14-1939. Mark A. Cantor, Marc Lorelli, Linda D. Mettes, BROOKS KUSHMAN P.C., Southfield, Michigan, for Appellee/Cross-Appellant in 14-1357 and 14-1608 and for Appellant in 14-1939.

_____

**OPINION**

_____

CLAY, Circuit Judge.  Plaintiff CFE Racing Products, Inc. ("Plaintiff") appeals from the order of the district court entering a narrow permanent injunction against BMF Wheels, Inc. and BMF Wheels owner Brock Weld ("Defendants") on February 24, 2014 following a jury trial that resulted in a verdict for Plaintiff.  Plaintiff argues that the injunction crafted by the district court is inadequate, and that the district court erred in declining to cancel Defendants' trademark registration and in refusing to award attorneys' fees.  Defendants also appeal from the judgment and from the district court's subsequent orders denying their post-trial motions.  Defendants contend that the evidence was inadequate to sustain the jury verdict for Plaintiff, or in the alternative that a number of evidentiary rulings merit reversal and remand for a new trial. Defendants also appeal from the June 24, 2014 order partially granting Plaintiff's motion to hold Defendants in contempt for failure to comply with the permanent injunction.

For the reasons set forth below, we **REMAND** to the district court for the award of attorneys' fees, modification of the injunction to prohibit Defendants from using the infringing mark "BMF Wheels," and for cancellation of their registered "BMF Wheels" trademark.  We **AFFIRM** the judgment of the district court in all other respects.

**STATEMENT OF FACTS**

**Procedural History**

The present litigation arises from the Defendants' use of a mark reading "BMF Wheels" on its products and advertising; a mark that is strikingly similar to the logo and registered trademark "BMF" that Plaintiff places on its high-performance cylinder heads.  Plaintiff filed a complaint against Defendants in August 2011 alleging violations of the Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1125(a), and the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws Ann. §§ 445.901 *et seq*.  An amended complaint filed several months later added a claim seeking cancellation of Defendants' registration of the trademark "BMF Wheels" under 15 U.S.C. § 1119.

After a three-day trial, the jury made the following findings by special verdict form: (1) that "[D]efendants' use of its mark in connection with the sale of its products creates a likelihood of confusion with the plaintiff's registered BMF trademark;" (2) that "[P]laintiff's unregistered BMF logo trademark is a valid trademark owned by the plaintiff;" and (3) that, as to each of the five BMF Wheels logos submitted to the jury, "[D]efendants' use of its mark in connection with the sale of its products creates a likelihood of confusion with the plaintiff's unregistered BMF logo trademark." (R. 100, Special Verdict Form, PageID 2037-38.) The jury also found (4) that Plaintiff had not proven by a preponderance of the evidence that "at the time of the defendants' initial use of BMF, the defendants intended to derive a benefit from the plaintiff's goodwill or reputation," and (5) that Plaintiff failed to prove that it "suffered actual damages." (*Id.* at 2038.)

The district court entered judgment for Plaintiff in February 2014 following briefing on the issue of remedy. The district court also entered a permanent injunction that restrained Defendants from using current or future logos that approximated the visual appearance of Plaintiff's logo, but permitted them to continue using the phrase "BMF Wheels" so long as it was accompanied by a disclaimer; imposed restrictions on Defendants' use of the letters "BMF" on products and advertising; and required Defendants to withdraw all media advertising bearing the BMF logos by April 30, 2014 and to dispose of stock bearing the logos five months later, on September 30, 2014. Plaintiff, dissatisfied with this limited relief, filed a timely notice of appeal.

In April 2014, the district court entered an opinion and order denying Defendants' motions to approve a new proposed logo, modify the injunction, and extend compliance deadlines and to stay the injunction pending appeal. The district court also denied Defendants' motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), together with their alternative motion for a new trial pursuant to Federal Rule of Civil Procedure 59, and Plaintiff's motion to amend or correct the judgment. Defendants filed a timely notice of appeal from these orders.

On June 20, 2014, the court considered Defendants' request for approval of its redesigned logo and held that the new logo did not comply with the injunction. On June 24, 2014, the district court granted Plaintiffs' motion for contempt based on Defendants' failure to withdraw

advertising bearing the challenged logos, ordered Defendants to comply with the injunction, and imposed sanctions. Defendants filed a timely notice of appeal of these orders, initiating the third of these consolidated appeals.

## Factual Background

### A. Plaintiff's BMF Line

Plaintiff CFE Racing Products is a company founded in 1983 by Carl Foltz to manufacture and sell high-end cylinder heads in the automotive parts "aftermarket."[1] Initially, Plaintiff sold exclusively to professional racers under the brand name "CFE." Plaintiff eventually expanded its business to include a new "BMF" line of cylinder heads targeted to the consumer market. The choice of "BMF" was apparently inspired by a wallet bearing a certain indelicate phrase of those initials that was featured in the movie Pulp Fiction. Foltz and employees in his shop would use the shorthand "BMF" to describe cylinder heads that had a particularly impressive flow. Over the years, people frequently asked him what "BMF" stood for, putting forward hypotheses like "[b]ig monster flow," "big massive" flow, and "by Mr. Foltz." (R. 107, Foltz Tr. Testimony, PageID 2245.).

When Plaintiff launched the BMF line, it hired a company in Florida to design the logo, with instructions to create a logo similar in appearance to its existing CFE logo. The result was a simple setting of the three capitalized letters in a bold, san-serif font, italicized to evoke speed. In color print, the logo uses a color scheme of black, red and white—the letters themselves are black, with red and white outlines around each letter. In several iterations of the logo, "Racing Heads" is set in smaller typeface immediately under "BMF." Plaintiff's first use of the new BMF logo was in a November 2003 advertisement. The company has used the logo in essentially the same form from November 1, 2003 until the present. Plaintiff applied for a trademark registration for the letters "BMF," without any specification as to font, style, size, or color, in March 2005. The trademark was registered on January 23, 2007.

---

[1]"Aftermarket" refers to the sale of vehicle parts for installation and use on a car that has already been fully manufactured and sold by its manufacturer.

The record contains anecdotal evidence of brand recognition for Plaintiff's BMF logo. BMF decals are popular with the company's customers. Plaintiff has used BMF logos on banners for race sponsorships, trade shows, and other events since 2006—these banners proved so popular that more than once they were appropriated by enthusiastic members of the audience following the race.

As of trial, Plaintiff's BMF line included cylinder heads, valve covers, and apparel bearing the BMF logo. Foltz testified that the company had plans for expansion: they wanted to "fill in" the product line of cylinder heads, and they were in discussions with potential manufacturers to develop lubricants and mufflers that would carry the BMF brand. Plaintiff's sales, however, were declining rather than expanding. After reaching a high of $600,000 in annual revenue before the recession, total sales for the BMF line dropped to approximately $80,000 in 2012 (the last full year before the trial). Foltz attributed some of the tail end of the decline to his decision to pull BMF advertising after discovering Defendants' BMF brand in 2011.

**B. Defendant's Infringing Use of "BMF"**

Defendant BMF Wheels is a company founded in 2007 by Defendant Brock Weld. Defendants sell aftermarket wheels to customers, with an emphasis on trucks. Defendants' first use of the term "BMF Wheels" in commerce was October 1, 2007.

Weld testified at trial that he came up with the name "BMF Wheels" in the summer of 2006 as he was discussing plans for the new company with a colleague. They took inspiration from Weld's wallet, which bore the same indelicate phrase as the wallet from Pulp Fiction. According to his testimony, Weld had never seen Plaintiff's BMF mark and was not aware of its existence. Weld considered and rejected a number of mock-ups before settling on a final logo. The one he chose bears a striking similarity to Plaintiff's BMF logo. As with Plaintiff's logo, the three letters "BMF" are set in capitalized, san-serif typeface, with the same forward slant and sharply contrasting outlines in the color scheme of black, white and red. In some iterations of the logo, "Wheels" is set in smaller typeface immediately under "BMF."

Weld applied for trademark registration of "BMF Wheels" in July 2006. He testified that in preparing his application, he searched for "BMF" both online and in the PTO website, but did not find Plaintiff's logo. The "BMF Wheels" mark was registered to Weld without restriction based on style, font, size, or color on March 18, 2008. As of the time of trial, Defendants advertised nationally using the "BMF Wheels" logo.

Weld eventually filed two more applications for trademarks involving the initials "BMF"—one for "BMF" alone, filed in July 2009, and another for "BMF Offroad," filed in December 2010. Each application initially proposed a long list of aftermarket parts, including two dozen suspension lift components, tires, and automotive accessories like fender flares and runner boards. As will be discussed in more detail below, in each of these later applications the examining attorney with the PTO refused the application based on conflict with Plaintiff's "BMF" mark. Defendants abandoned the attempt to register "BMF Offroad," but continued to use the mark in their online marketing and in their catalogue. Meanwhile, they pursued the "BMF" application as to tires only, and obtained registration on the eve of trial. After Defendants stipulated that they would not seek to introduce materials relating to the "BMF" mark for tires, the trial court granted Plaintiff's motion *in limine* to exclude the PTO file and registration related to that mark.

## C.  Discovery of the Similar Brands and Anecdotal Confusion

Defendants first learned of Plaintiff's "BMF" mark not through Weld's trademark applications, but in 2008 when a former employee approached Weld and his business partner with concern that another company that was "ripping off" their logo. Another employee expressed similar concern. Weld's brother also sent Weld a text about Plaintiff's "BMF" logo, asking if he had ever seen it before.

Foltz did not learn of BMF Wheels until 2011, when the company and its similar logo came to his attention as a result of a comment made to his girlfriend at a "mini-Sprint" race for kids that Plaintiff was sponsoring on the West Coast. Around the same time, Plaintiff's marketing director Larry Gadette received a call from a man named Michael Locke asking about

an order for BMF valve covers to go with a set of BMF wheels.[2]  Gadette looked up the "BMF Wheels" logo and was immediately struck by the similarity.  As he described at trial,

> They are black, extended font, bold-faced logos with red outlines and the components of them are strikingly similar.  They both have got double outlines. They have both got white borders.  They are both based on the same derivative of the same font.

(R. 108, Gadette Tr. Testimony, PageID 2358.)  Gadette took a screen shot of Defendants' logo and placed it over Plaintiff's logo to compare the two.  He testified that "you couldn't have happen chanced on something that was closer," with an outcome resulting in "fractions of a degree of skew" and "fractions of an inch in width and height difference."  (*Id.* at 2359.)

## D.  Advertising and Marketing Channels

The BMF Wheels advertising that Foltz and Gadette eventually found was not to Foltz's liking.  Some of Defendants' ads featured scantily clad women and firearms.  One promotion was a "BMF Wheels Girl Contest," in which women sent in highly sexualized pictures of themselves in proximity to BMF Wheels.  BMF Wheels also sells product lines with allusions to drugs, such as Rehab and Novokane.  Foltz testified that he found this sort of advertising distasteful, and that he did not want that image for his company and the BMF brand.  Gadette, though clarifying that he personally was "not opposed to scantily clad women," explained that Plaintiff would avoid marketing like that as an economic matter, because some portion of potential consumers may be offended by such material, and the company has no reason to lose their business.  (R. 108 at 2322-23.)

Both parties sell their products through nationwide third-party distributors;  for Defendants, relationships with distributors account for the "vast majority" of their sales.  (R.108, Weld Tr. Testimony, PageID 2524.)  Although the two companies use different distributors, the distributors used by both sell a broad range of aftermarket parts, including wheels and cylinder heads.  Plaintiff markets its BMF line at an aftermarket trade show called "PRI" that Foltz described as showcasing "[j]ust about every aftermarket part," including wheels.  (R. 107 at 2258.)  Defendants attend the other major trade show for aftermarket products, SEMA.

---

[2]Mr. Locke, it turns out, worked at a company called BMF Customs, where he built custom motorcycles.

Though the companies advertise through similar means—including print ads in automotive related magazines, sponsorship of racing events, and commercial websites—there has been little actual overlap to date. Plaintiff's ads have appeared in half a dozen car-related magazines, including *Carcraft*, *Super Chevy*, *Chevy High Performance*, *Drag Illustrated*, *Drag News*, *National Dragster*, and *RPM Magazine*, while Defendants' ads have run in publications like *Truckin' Magazine* and *Diesel Power*. Although Defendants' marketing emphasizes trucks, their advertising materials also include muscle cars, jeeps, cross-overs, and utility vehicles. Both companies maintain their own websites; Defendants also market their products through social media. Both companies advertise their brand by sponsoring races, and in fact both have sponsored events at the same venue in Bowling Green, Kentucky.

Plaintiff stopped advertising its BMF line in 2011 after it learned of BMF Wheels. Foltz explained the company's decision to pull back the advertising of the product in light of Defendant's competing brand, testifying: "there is no sense to spend – you can spend millions of dollars on advertising, and to compete against the same image out there just doesn't make sense to me to do that." (R. 107. at 2258-59.)

## DISCUSSION

These consolidated appeals encompass challenges to the conduct of trial, the sufficiency of the evidence, the scope of relief awarded, and the district court's order holding Defendants in contempt for failure to comply with the permanent injunction. Defendants argue that they are entitled to judgment as a matter of law, and in the alternative, that they are entitled to a new trial based on asserted evidentiary errors, allegedly improper comments made in closing argument by Plaintiff's counsel, and the return of a verdict against the weight of the evidence. Plaintiff argues that the district court abused its discretion by refusing to cancel Weld's trademark registration of "BMF Wheels" and by permitting Defendants to continue using the "BMF Wheels" mark; and that the district court further erred by refusing to award attorneys' fees under the Michigan Consumer Protection Act. Finally, Defendants challenge the district court's order holding BMF Wheels in contempt for failure to withdraw advertising bearing the old logo by the deadline set out in the permanent injunction. We address each issue in turn.

**I. Defendants' Claim to Judgment as a Matter of Law**

Defendants argue in their opening appellate brief that they are entitled to judgment as a matter of law based on the insufficiency of the evidence to sustain a finding of likelihood of confusion, which is necessary to a claim of trademark infringement under the Lanham Act. *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 534 (6th Cir. 2014). Defendants, however, waived any claim for judgment as a matter of law on these grounds by failing to raise it before the district court during trial.

Federal Rule of Civil Procedure 50(a)(2) provides that "[a] motion for judgment as a matter of law may be made at any time *before the case is submitted to the jury*." (emphasis added). If the motion is timely made, then a party may renew it after the verdict pursuant to Rule 50(b). Failure to make the motion prior to the submission of the case to the jury constitutes a waiver of the right to raise the issue after the jury has returned its verdict. Fed. R. Civ. P. 50(b); *Maxwell v. Dodd*, 662 F.3d 418, 420-21 (6th Cir. 2011); *Libbey-Owens-Ford Co. v. Ins. Co. of N. Am.*, 9 F.3d 422, 426 (6th Cir. 1993) ("A party who has failed to move for a directed verdict cannot request the district court to rule on the sufficiency of the evidence supporting a verdict against him nor can he raise this issue on appeal.").

Here, Defendants never moved for judgment as a matter of law on the likelihood of confusion issue. At the close of Plaintiff's case-in-chief, they did make Rule 50(a) motions on four other issues: Plaintiff's claim for an accounting of profits; Plaintiff's damages claim based on corrective advertising costs; Plaintiff's MCPA claim; and Plaintiff's claim against Weld in his individual capacity. None of Defendants' arguments in support of these motions alluded to the sufficiency of the evidence regarding the likelihood of confusion with Plaintiff's marks.

Even where a party has made some reference to an issue in a Rule 50(a) motion that it later invokes as the basis for its renewed motion under Rule 50(b), the issue is not preserved if it was not raised in a sufficiently substantial way in the earlier motion. *Libbey-Owens-Ford Co.*, 9 F.3d at 425-27. In *Libbey*, we affirmed a district court's refusal to consider a Rule 50(b) motion on grounds that were not presented in a substantial way prior to the close of all the evidence. *Id.* This Court explained:

> This waiver rule serves to protect litigants' Seventh Amendment right to a trial by jury. In addition, the rule discourages courts from reweighing the evidence simply because they feel that the jury could have reached another result. Further, the rule serves to prevent "tactical victories at the expense of substantive interests." Requiring a motion for directed verdict prior to a motion for j.n.o.v. enables the defending party to cure defects in his proofs.

*Id.* at 426 (citations omitted); *see also Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 402 n.4 (2006) (explaining that permitting a party to request judgment entered on its behalf despite failure to make a Rule 50(a) motion would raise Seventh Amendment concerns). Defendants' briefing does not point to any instance prior to submission of the case to the jury where they presented the district court with substantial legal argument about the sufficiency of the evidence on the likelihood of confusion. Our own review of the record does not reveal any such motion.

In their reply brief, Defendants argue that the appeal is proper under Federal Rule of Evidence 103(b) and *Weisgram v. Marley Co.*, 528 U.S. 440 (2000), recasting their claim for judgment as a matter of law as seeking a remedy for the asserted evidentiary errors. Rule 103(b) provides that "[o]nce the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Fed. R. Evid. 103(b). In *Weisgram*, the Supreme Court held that courts of appeal could direct entry of judgment for a party on the basis of evidentiary errors where, "on excision of testimony erroneously admitted, there remains insufficient evidence to support the jury's verdict." 528 U.S. at 457. Thus, *Weisgram* addressed whether a court of appeals should consider the sufficiency of the evidence actually presented to the jury or the evidence at trial after excising the evidence erroneously admitted. *Id.* at 452-53. The Court never questioned Rule 50's requirement that a party present its motion to the court before submission of the case to the jury in order to preserve its argument that it is entitled to judgment as a matter of law. *See id.* at 452-57. Moreover, following *Weisgram*, the Supreme Court subsequently reaffirmed the mandatory nature of Rule 50's procedural requirements in *Unitherm*, where it held that failure to renew a motion for judgment as a matter of law following the jury verdict "forecloses [a party's] challenge to the sufficiency of the evidence." 546 U.S. at 404.

Defendants' attempt to salvage their claim for judgment as a matter of law is therefore unavailing. Because Defendants failed to challenge the sufficiency of the evidence on the likelihood of confusion between the marks before the submission of the case to the jury, their claim for judgment as a matter of law pursuant Rule 50 is foreclosed.

## II. Defendants' Claim for a New Trial

Defendants appeal the district court's denial of their motion for a new trial made under Federal Rule of Civil Procedure 59. Rule 59(a) permits a district court to grant a new trial following a jury verdict "for any reason for which a new trial has heretofore been granted in an action at law in federal court." We review the denial of a Rule 59 motion for a new trial for abuse of discretion. *Balsley v. LFP, Inc.*, 691 F.3d 747, 761 (6th Cir. 2012). A district court abuses its discretion when it "relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 405 (6th Cir. 2006). We will find an abuse of discretion only based on "'a definite and firm conviction that the trial court committed a clear error of judgment.'" *Id.* (quoting *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994)).

A new trial may be warranted under Rule 59 "'when a jury has reached a 'seriously erroneous result' as evidenced by . . . the verdict being against the weight of the evidence . . . or [] the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias.'" *Balsley*, 691 F.3d at 761 (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir.1996)). Defendants argue that the trial was unfair due to the introduction of inadmissible and prejudicial evidence; the exclusion of rebuttal evidence; and misleading or false statements made by Plaintiff's counsel. Additionally, Defendants argue that when the inadmissible evidence is excluded, the verdict is against the weight of evidence.

### A. Asserted Evidentiary Errors

An appellate court reviews evidentiary rulings by the district court for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997). In this context, we review *de novo* the district court's conclusions of law, such as whether certain evidence constitutes hearsay, and we review for clear error the factual determinations underlying the district court's legal

conclusions. *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1071 (6th Cir. 2014) (citing *United States v. McDaniel*, 398 F.3d 540, 544 (6th Cir. 2005)). Under the harmless error rule, an error in admitting or excluding evidence may furnish a basis for granting a new trial only if it affects a party's "substantial rights" or if justice so requires. Fed. R. Civ. P. 61; *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 514 (6th Cir. 1998). Where a party does not object to an evidentiary matter at trial, we review the admissibility of the evidence only for plain error. *Innovation Ventures*, 763 F.3d at 541.

Defendants assert three categories of evidentiary error. First, Defendants argue that the district court improperly admitted the Office Action issued by the Patent and Trademark Office ("PTO") refusing Defendants' "BMF Offroad" application, while erroneously excluding rebuttal evidence related to the "BMF" registration for tires. Second, Defendants argue that the district court erred in allowing Foltz to introduce impermissible legal opinion testimony by referring to the content of conversations with his lawyer. Third, Defendants argue that the district court erroneously allowed hearsay evidence regarding customer confusion while excluding rebuttal evidence as inadmissible hearsay.

### 1. The PTO Record Regarding Defendants' Trademark Applications

Defendants argue that the jury was presented with a lopsided record of decision-making by the PTO regarding Weld's various efforts to register BMF trademarks. As described above, Weld applied for registration of three different marks that used the letters "BMF." The first application, for "BMF Wheels," was submitted in July 2006 and resulted in registration in March 2008. Defendants highlighted this application and eventual registration of "BMF Wheels" in opening argument and Weld's testimony as indicative of his good faith.

In July 2009, Weld submitted a trademark application for "BMF" for a long list of aftermarket parts. The examining attorney issued a refusal in an Office Action dated June 1, 2010 based on a likelihood of confusion with Plaintiff's mark. In November 2010, the examining attorney appears to have indicated that she would withdraw the refusal if Weld limited the application to tires only. Weld eventually complied, filing the restriction in February 2011. The mark was registered on May 21, 2013, just prior to trial, and defense counsel notified Plaintiff that it may offer the registration as a trial exhibit. Plaintiff moved *in limine* to exclude

the registration and July 2009 trademark application under Federal Rule of Civil Procedure 37(c) (governing discovery sanctions), citing Defendants' failure to disclose information about the application in response to directly pertinent discovery requests. At oral argument on Plaintiff's motion, Defendants expressly stipulated that they would not seek to introduce the "BMF" registration for tires so long as Plaintiff would not seek to introduce the related PTO file; Plaintiff agreed. The district court accordingly granted Plaintiff's motion. Defendants did not seek to offer the materials at trial.

In December 2010, shortly after receiving the invitation to restrict the class of goods to tires on the "BMF" application, Weld submitted a third application to register the trademark "BMF Offroad" for the same extensive list of aftermarket parts as had originally been included in the July 2009 "BMF" application. This application, too, garnered a refusal from the examining attorney based on the likelihood of confusion with Plaintiff's mark. Defendants abandoned the attempt to register "BMF Offroad," but continued to use the mark in their online marketing and in their catalogue. Over Defendants' objection, the court allowed Plaintiff to introduce the PTO file for "BMF Offroad" and elicit testimony about the examining attorney's refusal to register the mark based on the likelihood of confusion with Plaintiff's mark.

Defendant argues that the district court abused its discretion in admitting the "BMF Offroad" file, and then by excluding the "BMF" registration for tires as rebuttal evidence regarding the PTO's judgment of the likelihood of confusion between Plaintiff's mark and Defendants' mark.

### a. The BMF Offroad File

At trial, Defendants objected on relevance grounds to the admission of the "BMF Offroad" file. Plaintiff argued that file was relevant to the issue of willfulness because it showed that Defendants continued to use BMF logos and marks despite receiving a rejection based on the likelihood of confusion with Plaintiff's mark. The district court ruled for Plaintiff, finding that the "BMF Offroad" file history "can make it more likely than not, than it would be without the evidence, that there is an intention to use the mark willfully with knowledge of the competing mark." (R. 108, Bench Ruling, at 2444.)

"Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence," and that fact "is of consequence" in the action. Fed. R. Ev. 401. Defendants' intent and alleged good faith in using the letters "BMF" was a material issue in the case, and one to which the defense devoted considerable energy. In fact, from their opening statement, Defendants made Weld's conscientious compliance with the PTO process and his reliance on the federal government's stamp of approval in registering "BMF Wheels" a centerpiece of their argument that he acted in good faith. As a matter of relevance, we agree with the district court that Defendants' continued use of "BMF Offroad" in their advertising after learning of the PTO rejection and abandoning the application has a "tendency" to make it "more probable" that their use of the letters "BMF" was willful. *Id.*

On appeal, Defendants now argue that the "BMF Offroad" file should have been excluded under Rule 403 in light of the risk of confusion and unfair prejudice that can result from introducing PTO office actions. Defendants cite an unpublished case from the Northern District of Illinois that collected cases cautioning against admission of PTO office actions, *Minemyer v. B-Roc Representatives, Inc.*, 2012 WL 346621, at *4 (N.D. Ill. Feb. 2, 2012). Introducing a PTO file does raise a risk that the jury will be unduly influenced by the examining attorney's determinations or confused by the terms of art in the text—and these, undoubtedly may be sound reasons for a district court to exclude such documents under Rule 403 balancing in a particular case. Defendants did not raise this argument below, however, so our review is for plain error only.[3] *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 548 (6th Cir. 2003).

Any error by the district court was not plain. While there may be sound reasons to exclude PTO files and office actions, cases do not unanimously condemn use of PTO rejections to show bad faith. In some cases, courts have relied on a party's persistence in the face of PTO rejections as evidence of bad faith. *Mr. Water Heater Enters. v. 1-800-Hot Water Heater, LLC*, 648 F. Supp. 2d 576, 588 (S.D.N.Y. 2009); *E. Gluck Corp. v. Rothenhaus*, 585 F. Supp. 2d 505, 517-18 (S.D.N.Y. 2008), *abrogated on other grounds by Salinger v. Colting*, 607 F.3d 68 (2d

---

[3]Defendants did allude to the possibility of confusion resulting from the "BMF Offroad" application in argument to the district court, but the concern they expressed was distinct from the one proffered on appeal. Below, they argued that the jurors would be confused by the discussion of a logo that was not an accused mark in the case, and they raised concern that time and attention would be wasted on tangential issues. Moreover, Defendants expressly made relevance the basis for their objection at trial, and they did not request that the district court exclude the evidence as unduly prejudicial under Rule 403 after receiving the ruling on relevance.

Cir. 2010). Moreover, because Defendants so heavily emphasized Weld's reliance on the PTO process as probative of his good faith, introduction of evidence that he disregarded red flags raised by the PTO about the use of the letters "BMF" in the aftermarket industry had probative value in countering the theory of the defense. Plaintiff also argued to the district court that because Defendants were relying on the presumption of validity attached to the "BMF Wheels" registration as part of their defense, the jury should be permitted to consider evidence that the PTO did find a likelihood of confusion in a similar application where the examining attorney was aware of Plaintiff's mark. In light of the lack of clear guidance in the cases and the probative value of the materials in responding to the defenses raised in this case, we cannot say that the court plainly erred in failing to *sua sponte* exclude the materials under Rule 403 balancing.

### b. The "BMF" Registration for Tires

Defendants also argue that the district court erred in "excluding" the registration and PTO file for the "BMF" mark for tires.[4] In particular, Defendants argue that the file history would have provided crucial rebuttal evidence as an instance where the examining attorney found Plaintiff's mark yet subsequently allowed a registration for "BMF" so long as Defendants restricted the mark to tires.

Defendants waived any claim that this evidence was wrongly excluded. "'[W]aiver is the intentional relinquishment or abandonment of a known right' leaving no correctable error in its wake." *Williams v. Port Huron Sch. Dist.*, 455 F. App'x 612, 623 (6th Cir. 2012) (Moore, J. dissenting) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Waiver requires "knowledge of the right and intent to waive that right, either by action or omission." *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 906 n.6 (6th Cir. 2006). Defendants were faced with a motion to exclude the "BMF" registration for tires as a sanction for discovery violations. Rather than oppose that motion on the merits, they willingly stipulated to keeping the registration out of the case in exchange for Plaintiff's agreement not to introduce the corresponding PTO file, which contained an interim refusal based on the likelihood of confusion with Plaintiff's mark. Defendants entered into this stipulation knowing that Plaintiff might still seek to introduce the

---

[4]Defendants never sought to introduce the exhibit at trial, much less as rebuttal evidence after Plaintiff drew attention to the PTO's refusal based on a likelihood of confusion with Plaintiff's mark in the "BMF Offroad" application. It is therefore incorrect to suggest that the district court "excluded" the "BMF" file as rebuttal evidence.

file history for "BMF Offroad." After intentionally relinquishing the right to offer the "BMF" registration for tires as evidence, Defendants cannot now claim error based on the omission of that evidence at trial.

### 2. Legal Opinion Testimony

Defendants also seek reversal based on the testimony offered by Foltz about his understanding of the scope of Plaintiff's trademark application and registration. Foltz testified in his direct examination regarding the scope of his BMF registration: "my understanding, when I communicated with my attorney, [was] that it covered us for automotive parts." (R. 107 at 2249.) Defendants did not object. On cross-examination, defense counsel pressed Foltz on the scope of CFE's application with regard to the goods claims in the following exchanges:

> Q.     Would it surprise you to know that the classification manual states that Class 7 does not include motors or engines for land vehicles?
>
> A.     Again, I can only tell you what my attorney told me. My attorney told me that we were protected against after market parts.
>
> . . .
>
> Q.     [T]he goods you claimed were cylinder heads, right? Forget about the class, you said cylinder heads.
>
> A.     I was under the understanding when I talked to my attorney that it was aftermarket parts for the automotive industry.
>
> Q.     You didn't file for aftermarket parts. You filed for cylinder heads. Is that correct or not?
>
> A.     I don't know that that's correct. When I talked to my attorney, he said we were covered under aftermarket parts.

(R. 107 at 2281, 2291.) Defense counsel did not raise any objections to these answers during cross-examination or request the judge to instruct Foltz to omit reference to his attorney's opinion. Defendants objected for the first time on redirect, when Plaintiff's counsel asked Foltz, "[i]s it your understanding that whatever the internal classification of the [PTO] . . . that's the limit of your trademark protection, you can't go outside the box?" (*Id.* at 2299.) The district court allowed the question, noting that defense counsel had "roundly explored" the same issue on cross. (*Id.*) Foltz answered that no, that was not his understanding.

Defendants argue that Foltz's statements reporting what he understood from his attorney were inadmissible both as hearsay and as legal opinion testimony. Responding to the hearsay challenge, Plaintiff argues that the testimony was offered only to prove Foltz's understanding, not that his belief was legally correct. If relevant, the testimony would be admissible for this purpose. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009) ("A statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay.") We can identify no issue requiring proof of Foltz's understanding, and Plaintiff does not offer one. Instead it appears that both attorneys were using questions about Foltz's understanding of the scope of the trademark application and registration as a means of suggesting to the jury what protection against similar marks Plaintiff could properly claim. The statements should have been excluded as hearsay.

Additionally, the statements conveyed the legal opinion of Foltz's attorney, at least as filtered through Foltz's understanding of the conversation. We have previously explained that "[t]he problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury. This 'invade[s] the province of the court to determine the applicable law and to instruct the jury as to that law.'" *Torres v. Cnty. of Oakland*, 758 F.2d 147, 149 (6th Cir. 1985) (quoting *F.A.A. v. Landy*, 705 F.2d 624, 632 (2d Cir. 1983)). Foltz's testimony during this passage conveyed an opinion regarding the legal effects of Plaintiff's trademark registration—a legal matter which was the responsibility of the trial court to explain to the jury. As legal opinion testimony, Foltz's statements should not have been admitted.

The error, however, was harmless. As a preliminary matter, we note that Defendants were equally implicated in the efforts to use Foltz's testimony about his understanding of trademark law as a proxy for legal argument. Because they objected only after engaging in the same problematic pattern of questioning themselves, their substantial rights were not affected by the district court overruling their belated objection. Additionally, we are confident that Foltz's statements about his own understanding of the scope of trademark protection sought and obtained by his company did not affect the outcome of the trial. The district court gave clear instructions on the legal issues encompassed by this testimony. The court's charge to the jury

included a statement clarifying that the PTO's classification system "is merely for convenience of searching; it does not limit or extend the applicant's or registrant's rights," and that "[t]he classification assigned to a trademark registration has no effect on the validity or scope of protection of the registered trademark." (R. 110-2, Jury Instructions, at PageID 2729.) As to the products covered by the registration, in response to a jury question that arose during deliberations, the district court instructed that Plaintiff's "BMF" registration gave Plaintiff the exclusive right to use the mark with cylinder heads, and that enforcement of that right "is not limited to products listed in the registration" but also includes "products reasonably related to them." (R. 109 at 2674.) Thus, any error was cured. And where prejudice from erroneously admitted evidence "'is cured by instructions of the court, the motion for a new trial should be denied.'" *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1047 (6th Cir. 1996) (quoting *Clarksville–Montgomery Cnty. Sch. Sys. v. United States Gypsum Co.*, 925 F.2d 993, 1002 (6th Cir. 1991)).

### 3. Out-of-Court Statements of Michael Locke

Next, Defendants argue that the district court improperly allowed Plaintiff's marketing director Larry Gadette to offer hearsay testimony when he relayed his conversation with Michael Locke as evidence of customer confusion. Relatedly, Defendants assert that they should have been permitted to introduce, in rebuttal, a declaration from Locke that he had never purchased BMF wheels and that he was not confused.

Defendants' arguments regarding Locke are entirely without merit. Gadette's testimony that Locke called to inquire about the status of his order for BMF valve covers and made reference to a corresponding set of BMF wheels was not offered for "the truth of the matter asserted," Fed. R. Evid. 801(c), but rather was "probative of the declarant's confusion," *Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993, 1003-04 (2d Cir. 1997) (citing Fed. R. Evid. 803(3)). The district court did not err in allowing the testimony.

The "rebuttal" declaration from Locke, in contrast, was plainly proffered by Defendants to prove the truth of his assertions—that he had not purchased BMF wheels, and that he was not confused. Defendants seek to rely on the state of mind exception to the hearsay rule, but that exception requires that the statement concern the declarant's "then-existing state of mind;" it

expressly prohibits "a statement of memory . . . to prove the fact remembered." Fed. R. Evid. 803(3). Locke's declaration that he was not confused at the time of the call was a statement of memory offered for its truth. The district court correctly excluded the declaration.

## B. Alleged Improper Statements by Plaintiff's Counsel

Defendants also argue that a new trial is warranted because of allegedly improper comments made by Plaintiff's counsel in closing argument. Defendants must meet a high standard to obtain a new trial on the grounds of improper statements by opposing counsel. *Balsley v. LFP, Inc.*, 691 F.3d 747, 761-62 (6th Cir. 2012).

First, Defendants must overcome the "high level of deference that [we] afford[] to the trial court in determining whether improper comments prejudiced the jury." *Id.* at 762. This deference is grounded in our recognition that "[t]he trial court is in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record." *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980). We have previously instructed that "the power to set aside verdict for misconduct of counsel should be sparingly exercised on appeal." *Id.* (citation and quotation marks omitted). In considering whether allegedly improper attorney statements merit a new trial, we analyze the totality of the circumstances, "including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself." *Balsley*, 691 F.3d at 761 (quoting *Mich. First Credit Union v. CUMIS Ins. Soc'y, Inc.*, 641 F.3d 240, 249 (6th Cir. 2011)).

Even if the statements are improper, Defendants are not entitled to a new trial unless "there is a reasonable probability that the verdict of the jury has been influenced by such conduct." *Id.* (quoting *Strickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir. 1998)). Our review, as in other issues in this case, is further constrained by the fact that Defendants did not object to any of the allegedly improper comments. Their failure to object "raise[s] the degree of prejudice which must be demonstrated" in order for this Court to grant the request for a new trial. *Strickland*, 142 F.3d at 358. We have found statements that were "egregious" or "outrageous" to have met this standard. *Id.*

We conclude that a new trial is not warranted. First, all but one of the challenged statements merely contrasted the PTO file for "BMF Offroad" with the application leading to the registration for "BMF Wheels," or otherwise highlighted the examiner's basis for finding a likelihood of confusion with Plaintiff's mark. For example, Plaintiff pointed out to the jury that the "BMF Offroad" examiner defined the relevant category of goods as "vehicle parts," and that the examiner concluded that "because the marks are highly similar, and the goods being provided by both parties are related, registration must be refused." (R. 109 at 2615-16.) Plaintiff placed especially heavy emphasis on the fact that the examiner in the "BMF Offroad" file found and considered Plaintiff's mark, unlike the examiner in the "BMF Wheels" file. (*Id.* at 2615, 2657.) Defendant objects that these statements "turned on its head" the presumption of validity accorded by statute to their registered trademark "BMF Wheels," and created a "presumption of invalidity" by suggesting to the jury that the conclusion of the examiner in "BMF Offroad" should be given more credence. Def.'s First Br. at 42. That, we imagine, was precisely the point. The presumption of validity attaching to a trademark registration under 15 U.S.C. § 1057(b) may of course be rebutted. *Mktg. Displays, Inc. v. TrafFix Devices, Inc.*, 200 F.3d 929, 934 (6th Cir. 1999), *rev'd on other grounds sub nom. TrafFix Devices, Inc. v. Mktg. Devices, Inc.*, 532 U.S. 23 (2001). Evidence that the PTO, when aware of Plaintiff's mark, identified a likelihood of confusion with a proposed mark using "BMF" on auto-parts is rebuttal evidence casting doubt on the reliability of the registration process for "BMF Wheels," the accused mark in the case. *See Mktg. Displays*, 200 F.3d at 934 ("[T]here is no evidence that the PTO considered the WindMaster mark, and the PTO might have made a mistake."). Defendants do not argue that the "BMF Offroad" file was inadmissible for this purpose, and indeed never requested a limiting instruction from the district court. These statements were not improper.

It appears that Defendants' true concern is that Plaintiff was able to make arguments about the PTO record without acknowledging the "BMF" registration Weld obtained for tires. This incomplete discussion is the natural consequence of their stipulation to the exclusion of the "BMF" registration and file; Defendants have waived any objection on these grounds. *Olano*, 507 U.S. at 733. While their stipulation may have been unwise, they may not rely on the absence of that evidence from the record to characterize otherwise accurate statements as improper.

Defendants' more serious contention is that Plaintiff's counsel knowingly made a false statement in the course of the comparative discussion of the PTO files when he asserted that the examiner of the "BMF Offroad" application was the "only examiner" who saw Plaintiff's mark:

> So two categories of vehicle parts, both with the exact same name in them, BMF, because Offroads is a descriptive and really that has to be disregarded, so both with BMF in them, the same three letters, for automotive or for vehicle parts, no good, *says the only examiner who actually saw our mark.*

(R. 109 at 2657 (emphasis added).)   As with all the other allegedly improper statements, Defendants did not object.  On the basis of a cold record, this statement certainly is amenable to an interpretation that the PTO examining attorney who reviewed the "BMF Offroad" application was the only examining attorney ever to find Plaintiff's mark in analyzing a trademark application from Defendants.  This is clearly incorrect insofar as it goes; the examining attorney for the application that eventually became the "BMF" registration for tires also found Plaintiff's mark—but that attorney, too, issued an initial rejection based on likelihood of confusion with Plaintiff's mark.  The falsity detected by Defendants is potentially material only because the examining the examining attorney in the "BMF" registration eventually resolved her concern and allowed the registration to proceed as to tires only.  Defendants waived their right to present that outcome to the jury, and Plaintiff's statement is in conflict with that outcome only by a chain of inferences.   While Plaintiff's counsel should have chosen his words more carefully, this misstatement is not so "outrageous" or "egregious" that Defendants are entitled to a new trial notwithstanding their failure to object.  *Strickland*, 142 F.3d at 358.

## C.  The Weight of the Evidence

The third basis for a new trial advanced by Defendants is that the verdict was against the weight of the evidence.  "[G]ranting a new trial on this ground is a rare occurrence." *Innovation Ventures*, 763 F.3d at 534 (quoting *Armisted v. State Farm Mut. Auto. Ins. Co.,* 675 F.3d 989, 995 (6th Cir. 2012)).  We will uphold the verdict reached by the jury "if it was one which the jury reasonably could have reached; we cannot set it aside simply because we think another result is more justified." *Id.*  We conclude that the jury reached a permissible verdict on the evidence.

The jury found that Defendants' use of the BMF Wheels marks created a likelihood of confusion with Plaintiff's registered and unregistered marks. The "likelihood of confusion" among consumers as to the origin of the goods provided by a defendant is a mixed question of fact and law. *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1116 (6th Cir. 1996). We consider eight factors in determining whether a finding of likelihood of confusion is permissible. *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1264 (6th Cir. 1985). These factors include:

1. strength of the plaintiff's mark;
2. relatedness of the goods;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser [care];
7. defendant's intent in selecting the mark;
8. likelihood of expansion of the product lines.

*Id.* There is no requirement that each factor be established in each case, nor do these factors imply "mathematical precision" or a particular balancing formula. *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). Instead, the factors are "interrelated in effect" and only a "guide to help determine whether confusion is likely." *Id.* The enumeration is meant "merely [to] indicate the need for weighted evaluation of the pertinent facts in arriving at the legal conclusion of confusion." *Frisch*, 759 F.2d at 1264. "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners Grp.*, 931 F.2d at 1107.

The similarity of the marks "is a factor of considerable weight," and here, it weighs very strongly in favor of a finding of likelihood of confusion. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 283 (6th Cir. 1997). A reasonable jury could find that Defendants' marks were nearly identical to Plaintiff's registered and unregistered marks. In "BMF Wheels," the letters "BMF" provide the dominant identifier as the non-generic element of the composite. The dominant role of the letters "BMF" in Defendants' mark plainly contributes to a likelihood of confusion with Plaintiff's registered trademark for the letters "BMF," without

restriction as to font, style, size, or color. *See, e.g., Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570 (Fed. Cir. 1983) (finding likelihood of confusion supported by the dominant role of the word "giant" in the two relevant marks, "GIANT FOOD" and "GIANT HAMBURGERS"). The striking visual similarity of Defendants' logo to Plaintiff's logo, of course, also supports a finding of a likelihood of confusion as to Plaintiff's unregistered marks.

Although Defendants dispute the degree of relatedness between the two companies' products, their efforts to diminish this factor are unavailing. The products were both aftermarket vehicle parts. In fact, both companies sold in the specialty aftermarket for automotive parts—namely, in a market targeted to consumers who are not merely repairing their vehicles, but instead seeking to improve image and performance. The relatedness of the products is further illustrated by the fact that the distributors used by both companies sold cylinders heads and wheels alike.

In the circumstances of this case, the nearly identical nature of the marks and the relatedness of the goods are likely sufficient to reject Defendants' claim that the verdict was against the weight of the evidence. We would be remiss, however, if we did not point out additional evidence supporting the jury's finding that there was a likelihood of confusion. The jury heard anecdotal evidence of actual confusion in Gadette's testimony about the call he received from Michael Locke asking about a BMF valve cover order to go with a set of BMF wheels. Additionally, the initial perception of Weld's colleagues and brother that Plaintiff's company must be "ripping off" Defendants' mark reveals the high degree of similarity these individuals found between the marks. Although Defendants emphasize the degree to which Plaintiff's mark was in decline, the jury could have concluded that it had some strength based on the moderate distinctiveness of the design, significant previous sales numbers, and testimony about Plaintiff's success with targeted marketing. Finally, the record contained evidence that both companies were likely to expand their product lines: Foltz reported discussions with manufacturers about producing lubricants and mufflers that would carry the "BMF" brand, and in the course of the back and forth about the PTO record, the jury heard evidence of Defendants' proposed expansion into tires and items like suspension parts and vehicle grilles. The verdict, in short, was well supported by the evidence. A new trial is not warranted.

**III. Plaintiff's Challenge to the Narrow Scope of Injunctive Relief**

Plaintiff contends that the district court abused its discretion in declining to cancel Defendants' trademark and in permitting Defendants to continue using the phrase "BMF Wheels," subject to redesign of the logo and disclaimers of affiliation in some instances. We agree.

**A. Cancellation of the Trademark Registration for "BMF Wheels"**

Part of the equitable relief Plaintiff requested was the cancellation of Weld's registered trademark to "BMF Wheels" pursuant to 15 U.S.C. § 1119. That provision of the Lanham Act authorizes district courts to rule directly on the validity of a registration:

> In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action.

§ 1119. Courts have held that the permissive language of § 1119, providing that the court "may" determine the right to registration, order cancellation of registrations, and the like, endows the district court with discretionary authority. *Empresa Cubana del Tabaco v. Culbro Corp.*, 541 F.3d 476, 478 (2d Cir. 2008). Therefore, "[a] district court's determination to grant relief pursuant to 15 U.S.C. § 1119 is reviewed for an abuse of discretion." *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 264 (2d Cir. 2011).

A request for cancellation under § 1119 must be supported by a showing that (1) the party "has standing to petition for cancellation because it is likely to be damaged," and (2) "there are valid grounds for discontinuing registration." *Coach House Rest. v. Coach & Six Rests.*, 934 F.2d 1551, 1557 (11th Cir. 1991). Appellate courts have found an abuse of the discretionary authority granted by § 1119 where district courts "refus[e] to order the cancellation of registrations for claimed marks found to be incapable of serving as valid marks." *See, e.g.*, *Gracie v. Gracie*, 217 F.3d 1060, 1065 (9th Cir. 2000). As the Seventh Circuit explained, because the judgment of a court "may raise doubts about the validity of a trademark registration, § 1119 arms the court with the power to update the federal trademark register to account for a mark's actual legal status (or lack thereof) after it has been adjudicated, thereby reducing the

potential for future uncertainty over the rights in a particular mark." *Cent. Mfg., Inc. v. Brett*, 492 F.3d 876, 883 (7th Cir. 2007). Where a jury's verdict establishes that one of the party's registered trademarks is invalid, then "cancellation is not merely appropriate, it is the best course." *Id.*

The district court declined to cancel Weld's registration because it determined that "[c]onfining the defendants' use of [their] registration to the phrase 'BMF Wheels' and limiting their use of that phrase adequately protects the plaintiff's interest in its mark." (R. 125, Opinion Regarding Injunctive Relief, PageID 2908.) This reasoning overlooks two crucial aspects of the case. First, Plaintiff's interest in its registered mark must be understood by the scope of its registration, which encompassed the use of "BMF" without restrictions as to style. Second, the jury's verdict necessitates a finding that Defendants' registered trademark is invalid. The PTO may not issue registration for a trademark if the proposed mark "[c]onsists of or comprises a mark which so resembles a mark registered in the [PTO], or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). In other words, the PTO may not issue registered marks for logos that cause confusion with a registered or unregistered trademark. *See id.*; *Coach House Rest.*, 934 F.2d at 1559 (holding that a likelihood of confusion furnishes one ground for cancelling a registration).

By special verdict form, the jury explicitly found that Defendants' use of its mark "BMF Wheels" created a likelihood of confusion with "[P]laintiff's registered BMF trademark." (R. 100, Verdict Form, PageID 2037.) The district court supported its decision not to order cancellation with the assertion that "[t]he principal point of confusion found by the jury was the use by the defendants of their logos, which closely approximated the style, font and colors used by the plaintiff's use of the letters 'BMF' in connection with its products." (R. 125 at 2907.) This conclusion was clearly erroneous. Plaintiff's registered "BMF" trademark provided no restriction as to size, style, font, or color, so the "principal point of confusion" found by the jury could not have been the similar style, font, and colors of the two marks. To give effect to the jury's finding that Defendants' marks created a likelihood of confusion with Plaintiff's registered

trademark, we must acknowledge that this likelihood of confusion is fatal to the validity of the "BMF Wheels" registration—as the sole point of similarity between the two, and the sole potential source of confusion is the use of the three letters "BMF." Moreover, the district court's instructions made plain that a finding of likelihood of confusion with Plaintiff's mark was equivalent to a finding of the invalidity of Weld's registration:

> You have heard evidence that Brock Weld is the owner of a trademark registration for the mark BMF Wheels for land vehicle parts, namely wheels, registered on March 18, 2008, Registration Number 3,400,041. That registration means that the owner of the registration has the exclusive right to use the – to use the registered mark in connection – in commerce or in connection with the goods or services specified in the registration unless the registration is determined to be invalid. *You may find that the registration is invalid if the Plaintiff proves by a preponderance of the evidence that use of the mark is likely to cause confusion among ordinary buyers as to the source of the products.*

(R. 109 at 2582 (emphasis added).) Although the special verdict form did not include a special interrogatory on the validity of Weld's registration, the jury's finding of a likelihood of confusion with Plaintiff's registered "BMF" trademark cannot be reconciled with the district court's implicit finding that the Weld's registration is nonetheless valid.[5] As we have already discussed, the jury's verdict was fully supported by the evidence. Here, as in *Gracie*, "[i]n light of the jury verdict, which the district court allowed to stand, the district court should have ordered cancellation" of Weld's federal registration for "BMF Wheels." *Gracie*, 217 F.3d at 1066; *see also In re Lewis*, 845 F.2d 624, 629 (6th Cir. 1988) ("[W]hen a party has a right to a jury trial on an issue involved in a legal claim, the judge is of course bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim." (internal quotation marks omitted)).

---

[5]The district court described its ruling as "limiting" Defendants' registration by a number of means that ultimately prove illusory. It purported to confine Defendants' "use of [the] registration to the phrase 'BMF Wheels'"—yet the registration was for that precise phrase. (R. 125 at 2908.) The court also prohibited Defendants from "using their registered mark in connection with the production, promotion, display or sale of any product except automotive wheels and rims." (*Id.*) To find this limitation supportable, we would need to ignore the reality that Defendants' principal use of the mark—and unquestionably the use underlying the jury's verdict in this case—is already in connection with wheels. Although there was some evidence that the companies intended to expand their BMF product lines, that relatively minor evidence would not have supported a finding of likelihood of confusion absent a finding that the parties' current BMF products were materially related. Finally, the district court required that use of the mark must be accompanied by a disclaimer of association with Plaintiff. The necessity of a disclaimer, however, underscores the invalidity of the mark. *See* 3 McCarthy on Trademarks and Unfair Competition § 19:2 (4th ed.) ("Since the goal of the register is to make registration and use as coincidental as possible, where a court has determined that a party cannot use a mark without a prescribed disclaimer, that mark cannot be registered. Use of the mark without a disclaimer is illegal and is not a basis for registration.") (citing *Ultracashmere House, Ltd. v. Spring Mills, Inc.*, 828 F.2d 1580 (Fed. Cir. 1987)).

**B. Scope of the Injunction**

For the same reasons, we agree with Plaintiff that the district court abused its discretion in issuing an injunction that permitted Defendants to continue using the letters "BMF" in connection with their products. We review the scope of injunctive relief in a trademark case for abuse of discretion. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006). The factual findings of the district court are reviewed for clear error, and the legal conclusions are considered *de novo. Id.*

The Lanham Act grants federal courts hearing trademark infringement actions "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). Courts must "closely tailor injunctions to the harm that they address." *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 972 (D.C. Cir. 1990); *see also Innovation Ventures*, 763 F.3d at 545. "In a trademark case, a court determines the scope of an injunction depending upon: the manner in which the plaintiff is harmed, the ways in which the harm can be avoided, the viability of the defendant's defenses, the burden that would be placed on the defendant and the potential effect upon lawful competition between the parties." *ProNational Ins. Co. v. Bagetta*, 347 F. Supp. 2d 469, 472 (E.D. Mich. 2004) (citing *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 130 (1947)).

The district court gave inadequate attention to the nature of the harm suffered by Plaintiff. As with the request for cancellation, the district court's determination that adequate relief could be achieved by requiring redesign of the logo and limiting Defendants' use of "BMF Wheels" depended on its belief that the "principal point of confusion" was the similarity in the appearance of the parties' logos. As we have already discussed, this position is untenable in light of the jury's finding that Defendants' use of "BMF Wheels" created a likelihood of confusion with Plaintiff's registered "BMF" trademark, which had no specification as to style, font, size, or color. Effective relief must address the harm to Plaintiff's interest in its registered trademark, not simply in its logo.

The reality of this harm is not negated by the absence of damages. For the purpose of an injunction, "'[i]rreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control

over one's reputation is neither 'calculable nor precisely compensable.'" *Juicy Couture, Inc. v. Bella Int'l Ltd.*, 930 F. Supp. 2d 489, 503 (S.D.N.Y. 2013) (quoting *U.S. Polo Ass'n, Inc. v. PRL USA Holdings Inc.*, 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011)). Indeed, the district court well articulated this interest in stating that the remedial purpose of the injunction must be "to restore to the plaintiff the rightful control over its mark and eliminate the likelihood of confusion of the defendants' products with those of the plaintiff." (R. 125 at 2905.) The source of the district court's error was in overlooking the scope of Plaintiff's registered mark, and therefore in failing to meaningfully address the likelihood of confusion created by Defendants' use of the letters "BMF," regardless of the visual design.

We do not find the other factors sufficiently weighty to justify the district court's failure to issue an effective remedy for Plaintiff's loss of control over its registered trademark. Although Weld and his business partner submitted declarations swearing to their belief that requiring BMF Wheels to change its name would be a death knell to the company, they did little to substantiate this dire prediction beyond offering their speculation about the possible reactions of their wholesale customers and other business contacts. Additionally, the district court pointed to no evidence that a disclaimer would be effective in eliminating the risk of confusion—and, as the disclaimer would only apply to packaging, it leaves the confusing similarity of the mark "BMF Wheels" unmitigated on the wheels themselves. *Cf. Austrialian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1243 (10th Cir. 2006) (rejecting proposed disclaimer remedy where the defendants had "not shown that a disclaimer would be sufficient to alleviate the likelihood of confusion"); *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) ("Where . . . an infringer attempts to avoid a substantial likelihood of consumer confusion by adding a disclaimer, it must establish the disclaimer's effectiveness."); *see also Int'l Kennel Club, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1093 (7th Cir. 1988) ("[W]e are convinced that that [the] plaintiff's reputation and goodwill should not be rendered forever dependent on the effectiveness of fineprint disclaimers often ignored by consumers.").

## IV. Plaintiff's Claim to Attorneys' Fees Under the Michigan Consumer Protection Act

The district court held that a plaintiff that does not suffer actual damages is not entitled attorneys' fees under the Michigan Consumer Protection Act. "Statutory construction is a

question of law that this Court reviews de novo." *Jordan v. Mich. Conference of Teamsters Welfare Fund*, 207 F.3d 854, 858 (6th Cir. 2000) (citing *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 454 (6th Cir. 1999)). *De novo* review continues to apply where a district court interprets state law. *United States v. Dedman*, 527 F.3d 577, 584-85 (6th Cir. 2008).

The Michigan Consumer Protection Act ("MCPA") authorizes private suits for a set of unfair competition violations, including trademark infringement. Mich. Comp. Laws Ann. §§ 445.903(1)(b); 445.911. The parties agree that the "likelihood of confusion" finding by the jury controls Defendants' liability under the MCPA. They disagree, however, as to whether Plaintiff is entitled to attorneys' fees. The relevant provision states:

> [A] person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees.

§ 445.911(2). The Michigan Court of Appeals has explained that "[o]ne of the purposes behind . . . the MCPA is to provide, via an award of attorney fees, a means for consumers to protect their rights and obtain judgments where otherwise prohibited by monetary constraints." *Jordan v. Transnat'l Motors, Inc.*, 537 N.W.2d 471, 473 (Mich. Ct. App. 1995). The Michigan Supreme Court has not provided authority on when a plaintiff is entitled to attorneys' fees under this provision.

The district court interpreted the phrase "a person who suffers loss" to operate to restrict fee awards to parties that prove actual damages. Thus, because the jury awarded no damages, the court held that Plaintiff was not entitled to fees. As a preliminary matter, the district court's interpretation was internally inconsistent. The same requirement of loss applies to the authorization to bring suit and the right to recover statutory damages; yet the district court ordered that Plaintiff was entitled recover the statutory damages of $250. Indeed, the use of the term "loss" separate from "damages" in the same sentence strongly suggests that the two are not synonymous.

Second, the weight of authority in Michigan is contrary to the result reached by the district court. The Michigan Court of Appeals directly addressed the loss requirement in *Mayhall v. A.H. Pond Co.*, 341 N.W.2d 268, 269 (Mich. Ct. App. 1983). There, reversing the

dismissal of a complaint that did not allege a monetary loss, the court found that "[b]y specifying . . . that in order to bring suit a plaintiff must suffer a 'loss' as a result of the statutory violation, the Legislature . . . has incorporated in the acts the common-law requirement of injury." *Id.* at 270. The decisions of an intermediate state appellate court are persuasive in our interpretation of that state's law, and we adopt the sound interpretation of § 445.911(2) in *Mayhall* as well-reasoned and consistent with the language, statutory framework, and purpose. *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358 (6th Cir. 2013).

In reaching an opposite conclusion, the district court misconstrued *Gorman v. Am. Honda Motor, Co.*, 839 N.W.2d 223 (Mich. Ct. App. 2013). The district court quoted a passage from *Gorman* describing that "nominal damages may be awarded under the MCPA without proof of actual damages," *id.* at 233, yet failed to recognize that this proposition runs counter to its conclusion that a plaintiff must prove actual damages to "suffer loss" within the meaning of the statute. In this portion of *Gorman*, the Michigan Court of Appeals was recounting another case, *Gadula v. Gen. Motors Corp.*, No. 213853, 2001 WL 792499 (Mich. Ct. App. Jan. 5, 2001), that confirmed that monetary loss was not necessary for a plaintiff to bring an MCPA claim. *See id. Gadula*, consistent with our interpretation of the statute, held that "[a]lthough [the] plaintiff failed to present sufficient evidence on the required element of damages under her breach of warranty claims, [she] did present evidence from which a jury could find a compensable violation of the MCPA." *Gadula*, 2001 WL 792499 at *3. Consistent with the interpretation that "loss" incorporates the common law concept of injury, Michigan courts have allowed plaintiffs to recover reasonable attorneys' fees without establishing actual damages. *McNeal v. Blue Bird Corp.*, No. 308763, 2014 WL 2619408, at *10 (Mich. Ct. App. June 12, 2014) (rejecting the argument that MCPA plaintiff was not entitled to attorneys' fees when "the jury awarded zero damages for the claim.") (citing *Mikos v. Chrysler Corp.*, 404 N.W.2d 783 (Mich Ct. App. 1987)).

The district court's interpretation of the MCPA as requiring proof of actual damages was in error. On remand, the court should award reasonable attorneys' fees in accordance with Michigan law. *See Smolen v. Dahlmann Apartments, Ltd.*, 463 N.W.2d 261, 263 (Mich. Ct. App. 1990) (discussing the factors to be considered in awarding attorneys' fees under the MCPA).

**V. Defendants' Challenge to the Contempt Ruling**

Defendants appeal from the district court's order holding them in contempt for failing to withdraw advertising bearing the prohibited logo design by the date specified in the preliminary injunction. We review a district court's finding of civil contempt for an abuse of discretion. *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir. 2006). Factual findings underlying the contempt ruling are reviewed for clear error. *Innovation Ventures*, 763 F.3d at 544.

"A court's ability to issue injunctions, and then enforce those injunctions with a finding of contempt, springs from the court's inherent equitable powers." *Innovation Ventures*, 763 F.3d at 544 (citing *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)). In order to support a motion for civil contempt, a plaintiff has "the burden of establishing by clear and convincing evidence that [the defendant] 'violated a definite and specific order of the court requiring [the defendant] to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)). There is no requirement to show intent beyond knowledge of the order. *In re Jaques*, 761 F.2d 302, 306 (6th Cir. 1985).

The order at issue here is the permanent injunction entered by the district court on February 24, 2014. The injunction mandated that Defendants "**MUST** . . . [w]ithdraw all advertising in all media that bears the logos set out herein on or before April 30, [2014]." (R. 126, Judgment, PageID 2912 (emphasis in original).) The injunction also required Defendants to "dispose of, by sale or destruction, all existing stock of products bearing the logos set out herein on or before September 30, 2014." (*Id.*) The district court found Defendants in contempt on June 24, 2014 based on their publication of advertising materials, after April 30, 2014, that included photographs of Defendants' wheels prominently displaying the old logo. The district court ordered Defendants to comply with the terms of the injunction, imposed a $500 fine for each day following the ruling until they fully complied with the order, and required Defendants to pay Plaintiff $2,500 in attorneys' fees.

These orders were not an abuse of discretion. Defendants argue that the injunction was ambiguous on the theory that permission to continue selling products bearing the old logos until

September 2014 created an implied exception to the requirement to withdraw advertising bearing the logo. The terms of the injunction do not admit such a meaning; rather, the injunction clearly states two absolute, independently applicable requirements: Defendants were required to withdraw "all advertising in all media that bears the logos set out" in the judgment by the deadline of April 30, 2014; separately, Defendants were required to dispose of all products bearing the logos, by sale or otherwise, by September 30, 2014. Defendants could easily comply with both requirements simultaneously by displaying product photographs that did not show the old logo, or by displaying advertising that did not include pictures of the product.

Defendants also quibble with the district court's choice of words in describing its order as "clear and definite." Instead, Defendants argue the order must be "clear and unambiguous"—but that is simply a formulation of the same concept preferred by other circuits, and one which we have previously recognized as the equivalent of "definite and specific." *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1243 (6th Cir. 1996). Of course, the slight variation in phrasing does not provide Defendants a basis to evade the clear import of the district court's holding.

## CONCLUSION

We **REMAND** this case to the district court to award reasonable attorneys' fees to Plaintiff under the MCPA, to modify the injunction to preclude Defendants from using their infringing mark, and to order cancellation of the invalid BMF Wheels trademark registration. We **AFFIRM** the judgment of the district court in all other respects.